UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARVIN JOSEPH JONES III,

  Plaintiff,

-VS-

EQUIFAX INFORMATION
SERVICES LLC,

  Defendant.
_____/

CASE NO.:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Marvin Joseph Jones III, sues Equifax Information Services LLC ("Equifax") and alleges:

### Introduction

1. This is an action alleging Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (FCRA) by selling credit reports inaccurately reporting Mr. Jones as deceased.

2. The FCRA creates a private right of action against a consumer reporting agency for the negligent, 15 U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n, violation of any duty imposed by the FCRA. *Alexander v. Certegy Check Servs.*, No. 8:16-

1

CV-859-17JSS, 2016 U.S. Dist. LEXIS 180072, at *5 (M.D. Fla. Dec. 29, 2016) (*citing Collins v. Equifax Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015)).

3. Plaintiff seeks entry of judgment, actual damages, statutory damages, punitive damages, costs, and attorneys' fees. 15 U.S.C. §§ 1681n and 1681o.

## Jurisdiction, Venue and Parties

4. This Court has original jurisdiction over Plaintiff's claims arising under the FCRA pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

5. Personal jurisdiction exists over Defendant as Equifax has the necessary minimum contacts with the State of Georgia, this suit arises out of Defendant's specific conduct with Plaintiff in Georgia, and Plaintiff was injured in Georgia.

6. Venue is appropriate in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to Plaintiff's claims occurred in Atlanta, Georgia.

7. Plaintiff is a natural person residing in Bartow County, Georgia.

8. At all times relevant, Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Upon information and belief, Equifax, is a corporation with its principal place of business located 1550 Peachtree St. N.W., Atlanta, GA 30309-2402, and authorized to do business in the State of Georgia through its registered agent,

Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

10. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

11. Upon information and belief, Equifax disburses such consumer reports to third parties under contract for monetary compensation.

## Factual Allegations

12. Plaintiff believes that at least since 2021, Equifax has marked Plaintiff as "deceased" on his Equifax credit report as to a Bank of America ("BOA") account which does not belong to him, however Plaintiff's problems with Equifax go back further than that

13. On October 21, 2020, upon noticing false information on his credit report, such as a wrong date of birth, Plaintiff sent Equifax a written dispute concerning the incorrect date of birth.

14. On November 6, 2020, with the incorrect date of birth still present on his Equifax credit report, Plaintiff again sent a written dispute to Equifax attempting to correct the error.

15. On November 27, 2020, the incorrect date of birth was still present, so Plaintiff sent a third written dispute letter to Equifax asking Equifax to correct the wrong reporting and to list his correct date of birth.

16. Equifax failed to conduct any independent information and continue to report the wrong date of death. Moreover, because of Equifax's failure to conduct a reasonable investigation, Equifax allowed other inaccurate information to become part of Plaintiff's credit report.

17. At this point having grown incredibly frustrated with Equifax's inability to correct his date of birth, Plaintiff submitted a Complaint to the Consumer Financial Protection Bureau ("CFPB") on January 28, 2021, concerning Equifax's repeated failure to correct his personal information in its files.

18. On February 3, 2021, Equifax responded to and stated that it was still investigating Plaintiff's claims of an incorrect date of birth and to send in more evidence and to open a "MyEquifax" account (despite Plaintiff sending three separate letters with evidence prior).

19. Plaintiff submitted a second CFPB Complaint concerning Equifax and its unwillingness to correct his date of birth on February 6, 2021.

20. In the following months Plaintiff continued to routinely check his Equifax credit report, each time noticing that the incorrect date of birth remained, however on May 2, 2021, when Plaintiff pulled his Equifax credit report, he noticed for the first time Equifax was now reporting him as deceased.

21. Plaintiff disputed the inaccurate date of birth and the fact that he was alive and was being reported as deceased, Plaintiff communicated all the information for Equifax to know he was alive.

22. On September 29, 2021, Plaintiff received dispute results from Equifax wherein Equifax stated that Plaintiff's date of birth was reporting correctly and that the false Bank of America account did belong to Plaintiff. Equifax also stated that the "account has been updated to no longer report as deceased."

23. Despite Equifax only stating it was partially correcting his credit report, Plaintiff was tired of waiting to live his life and began applying for a car and a home, however to his utter amazement, he was repeatedly denied because, in direct contradiction to what Equifax had stated in its letter, Equifax _was still reporting Plaintiff as deceased_.

24. On May 31, 2022, Plaintiff sent a seven (7) page detailed dispute letter to Equifax detailing his long history of attempting to get Equifax to do the right thing and correct his personal information. In the letter Plaintiff included a picture of his driver's license, his CFPB's Complaints, images of his reports showing him as still deceased, images of his credit denials due to Equifax reporting him as deceased and a proof of life picture showing Plaintiff holding his driver's license and a copy of a current newspaper.

25. Plaintiff is not deceased.  Plaintiff has been alive at all relevant times of the allegations in this Complaint.

26. Equifax failed to do any investigation about Plaintiff's disputes.  Equifax never made any efforts to contact Plaintiff about his disputes.  Equifax ignored most of Plaintiff's dispute.

27. Equifax clearly knew Plaintiff was not deceased, Plaintiff repeatedly sent in all necessary evidence of his date of birth and proof he was not deceased (such as that his Driver's License was issued <u>after</u> his supposed death).

28. Despite this, Equifax willingly chose to continue reporting a wrong date of birth and that Plaintiff was deceased, when Equifax fully knew he was alive. Equifax continues to profit from having Plaintiff's credit report and selling it for a profit while denying Plaintiff the ability to look at his own credit report.

29. On June 19, 2022, Equifax sent Plaintiff a communication indicating his date of birth was correct and Plaintiff is not being reported as "deceased". (Report # 2170531335)

30. As of July 5, 2022, Plaintiff is unable to get his own credit report. Other entities are able to obtain it, but he is not able to. Plaintiff is an active member of www.MyEquifax.com and yet, Equifax refuses to believe he is alive.



31. Plaintiff mailed another detailed dispute to Equifax on July 6, 2022, again disputing that he is not deceased. Plaintiff had to retain an attorney to file a federal lawsuit to attempt to regain his credit worthiness.



32. As a result of Equifax's conduct, Plaintiff has suffered actual damages in the form of lost loans and credit opportunities, credit defamation, personal defamation, and emotional distress.

33. In particular, Equifax continued to report Plaintiff deceased during a pandemic causing Plaintiff significant anguish.

34. The FCRA requires that Equifax must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

35. The FCRA requires that Equifax must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b.

36. Equifax places a "deceased" notation or marking on reports when it is advised from any of their many data furnishing sources that a given consumer is deceased.

8

37. Equifax does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

38. Equifax does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

39. Indeed, Equifax employs no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

40. Even in instances where other data on the face of the consumer's report indicates that he is not deceased, Equifax employs no procedures which assure that a consumer with a "deceased" mark on her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

41. Once a "deceased" mark is placed upon a consumer's report, Equifax will not calculate and will not provide a credit score for that consumer.

42. Nevertheless, Equifax routinely sell to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

43. Upon Equifax's reports with a "deceased" mark sold to third parties, Equifax never calculate or provide a credit score for that consumer.

44. Equifax know that many third-party credit issuers require a credit score in order to process a given credit application.

45. Equifax knows that consumers without credit scores are unable to secure any credit from most credit issuers.

46. Equifax knows that living consumers are turned down for credit specifically because Equifax is reporting them as "deceased" and without a credit score.

47. Equifax has been put on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because Equifax is reporting them as "deceased" and without a credit score.

48. Equifax has received and documented thousands of disputes from consumers complaining that Equifax's credit reports have them erroneously marked as "deceased."

49. Nevertheless, Equifax employs no procedures which assure that a consumer marked as "deceased" on Equifax's reports are, in fact, deceased.

50. Equifax has no independent procedure to change an erroneous deceased status on its own and will merely parrot their furnishing source in the case of a

reinvestigation into the accuracy of the deceased status upon a consumer's report, which reinvestigation was triggered by a consumer dispute.

51. Nor does Equifax employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

52. For years after a consumer's actual death, Equifax will continue to sell for profit credit reports about that consumer.

53. Equifax will only remove a deceased consumer's file from its credit reporting database when it is no longer valuable to Equifax – meaning that nobody is continuing to buy those reports.

54. Equifax charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

55. Equifax profits from the sale of reports on the deceased.

56. Equifax has in their credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

57. Equifax knows that truly deceased consumers do not apply for credit.

58. Equifax knows that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed,

identity theft using the personal identifying information of deceased consumers is known to Equifax to be a common and major source of identity theft.

59.    Equifax warns the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

60.    Equifax has no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.  Damages continue to accrue as Equifax continues to report Plaintiff as deceased.

61.    Equifax knows that Plaintiff is/was making payments during the relevant time, yet continued to report him as deceased.

62.    Indeed, Equifax sells reports of the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

63.    For consumers who are deceased, there exists no permissible purpose under the FCRA for Equifax to ever sell their credit reports, absent a court order.

64. Equifax knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

65. At all times pertinent hereto, Equifax was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

66. At all times pertinent hereto, the conduct of Equifax, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein. Damages continue to accrue as Equifax continues to report Plaintiff as deceased.

## COUNT I
## Violations of the Fair Credit Reporting Act as to Equifax

67. Plaintiffs re-allege and reincorporate paragraphs 1 through 66 above.

68. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiffs. Despite Equifax believing that Plaintiff was dead, it published his credit report (containing the "customer deceased") to several entities. Moreover, Equifax has records of timely payments on several other accounts. No other furnisher ever

reported to Equifax that Plaintiff was deceased. Equifax does not allow or require its dispute investigators to contact a consumer disputing a "deceased" status. Equifax was the ONLY credit reporting agency reporting Plaintiff as deceased.

69. As a result of this conduct, action and inaction of Equifax, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from credit; and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials. Plaintiff was also forced to spend significant money repairing a vehicle he wanted to trade-in.

70. Equifax's conduct, action and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent entitling Plaintiffs to recover actual damages under 15 USC § 1681o.

71. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 USC § 1681n and/or § 1681o. WHEREFORE, Plaintiff respectfully requests that this Court award statutory, actual and punitive damages against Equifax, to Plaintiff, award Plaintiff her attorney fees and the costs of this action pursuant to 15 U.S.C. § 1681n and/or § 1681o; and grant all such additional relief as the Court deems appropriate.

## COUNT II
## Violations of the Fair Credit Reporting Act as to Equifax

72. Plaintiffs re-allege and reincorporate paragraphs 1 through 66 above.

73. Equifax violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from sources it has to know can be unreliable. Plaintiff provided all the necessary information for Equifax to conduct a reasonable investigation, but Equifax failed to do so. Equifax was aware that Plaintiff was alive. Equifax responded that the item was not being listed, when it was and still is reporting.

74. As a result of this conduct, action and inaction of Equifax, the Plaintiff suffered damages by stress associated with fear of denial, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of having a higher interest rate when applying for his mortgage. Plaintiff was under great stress from February through April attempting to resolve the mistake being reported by Equifax.

75. Equifax's conduct, action and inaction as willful, rendering it liable for

15

actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover under to 15 USC § 1681o.

76. The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 USC § 1681n and/or to 15 USC § 1681o.

**WHEREFORE,** the Plaintiff demands judgment and compensatory and punitive damages against Defendant, EQUIFAX INFORMATION SERVICES, LLC, jointly and severally; for his attorneys fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

DATED this 11th day of July 2022.

*Respectfully submitted,*

***/s/Octavio Gomez***
Octavio "Tav" Gomez, Esquire
Florida Bar #: 0338620
Georgia Bar#: 617963
Pennsylvania Bar#: 325066
The Consumer Lawyers PLLC,
412 E. Madison St. Suite 903
Tampa, FL 33602
Telephone: (844) 855-9000
Cell: (813) 299-8537
Facsimile: (844) 951-3933
Email: Tav@TheConsumerLawyers.com
Jason@TheConsumerLawyers.com
*Attorney for Plaintiff*

17