**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

MARVIN JOSEPH JONES III,

    Plaintiff,

    v.

EQUIFAX INFORMATION
    SERVICES LLC,

    Defendant.

_____/

CASE NO.: 1:22-cv-02719-VMC-RGV

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, MARVIN JOSEPH JONES III ("Plaintiff"), through undersigned counsel, hereby submits his Memorandum in Support of Plaintiff's Motion for Summary Judgment against Defendant, Equifax Information Services LLC ("Equifax").

**TABLE OF CONTENTS**

I.     INTRODUCTION

II.    FACTUAL BACKGROUND

III.   LEGAL STANDARD

IV.   ARGUMENT

       A. OVERVIEW OF THE FCRA AND EQUIFAX VIOLATIONS

1

OF THE FCRA

i.      Equifax's Policies Were Unreasonable As a Matter of Law and Resulted in Negligent/Reckless Inaccurate Reporting.

ii.     Equifax failed to conduct a reasonable investigation and to delete/correct the inaccurate information.

iii.    Equifax inaccurate reporting was harmful to Plaintiff.

iv.    Equifax Violations of The FCRA were Willful and Reckless

V.     CONCLUSION

## TABLE OF AUTHORITIES

**Cases**

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007)…………………pg. 4 and 18

*Sampson v. Equifax Info. Servs., LLC*, No. CV204-187, 2005 LEXIS 19240, at *3-4 (S.D. Ga. Aug. 29, 2005)……………………………………pg. 10 and 11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)…………………pg. 10 and 11

*Kernel Records Oyv. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012)………….pg. 11

*McGhee v. Rent Recovery Sols., LLC*, No. 1:17-cv-72-CC-JKL, 2018 U.S. Dist. LEXIS 220732, at *34-35 (N.D. Ga. July 6, 2018)…………………..pg. 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)……………..…….pg. 11

*Maxi-Taxi of Fla., Inc. v. Lee County Port Auth.*, 301 Fed. Appx. 881, 885

(11th Cir. 2008)……………………………………………………pg. 11

*Alabran v. Capital One Bank*, No. 3:04CV935, 2005 WL 3338663

    (E.D. Va. Dec 8, 2005) …………………………………………pg. 11

*Smith v. E-BackgroundChecks.com, Inc.*, 81 F. Supp. 3d 1342, 1357 n.18

    (N.D. Ga. 2014)…………………………………………………..pg. 13

*Price v. Trans Union, LLC*, 839 F. Supp. 2d 785, 793 (E.D. Pa. 2012)………pg. 13

*Andrews v. TRW, Inc.,* 225 F.3d 1063, 1068 (9th Cir. 2000)…………………pg. 13

*Pedro v. Equifax Info. Sols., LLC,* 868 F.3d 1275, 1281 (11th Cir. 2017)……pg. 13

*Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288,

    at 1302 (11th Cir. 2019)...........................................................pg. 18

*Collins v. Experian Info. Sols., Inc.,* 775 F.3d 1330, 1336 (11th Cir. 2015)......pg. 18

**Statutes**

15 U.S.C. § 1681e(b)

15 U.S.C. § 1681i

15 U.S.C. § 1681i (a)(5)

15 U.S.C. § 1681(a)(1)(A)

## I.   <u>INTRODUCTION</u>

    Plaintiff, Marvin Joseph Jones III, is moving for summary judgment against Defendant, Equifax Information Services LLC ("Equifax"). There are no disputes of material fact on multiple elements of Plaintiff's claims, entitling him to judgment as a

matter of law.  Plaintiff files this motion and is seeking a finding of liability for a violation of 15 U.S.C. § 1681e(b) and § 1681i against Equifax.

Plaintiff's claims are based upon inaccurate information in Plaintiff's credit report, and Equifax's repeated failures to conduct a reasonable investigation that would have much sooner, brought about positive results for the Plaintiff. Defendant failed to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit file, as well as failing to review and consider all relevant information received in Plaintiff's disputes. Furthermore, Equifax violated 1681i(a)(5) for its failure to update or delete any information that was the subject of Plaintiff's dispute as inaccurate or that could not be verified.

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681, *et seq*, was enacted "to ensure fair and accurate credit reporting." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007). In addressing this goal, Congress singled out Credit Reporting Agencies (CRAs") for specific legislation, requiring them to maintain and "whenever a consumer reporting agency prepares a consumer report **it shall** follow reasonable procedures to assure **maximum possible accuracy.**" 15 U.S.C. § 1681e(b) (emphasis added)

By including this directive, Congress established a first line of defense for

consumers to ensure that the CRAs (like Equifax) do not disseminate inaccurate information to existing and potential creditors.  A CRA's procedures for ensuring "maximum possible accuracy" are of paramount importance in the congressional framework to ensure "fair and accurate reporting." Without robust procedures, aimed at the highest standard of accuracy possible, there exists great risk that American consumers will be subjected to financial harm when creditors accept inaccurate information from the CRA, and thereupon make financial decisions about consumers.

Despite the serious potential harm, and despite Equifax's actual knowledge that Plaintiff was alive, it continued to report Plaintiff as deceased.  Equifax implemented policies that allow for a furnisher to report Plaintiff as deceased even while other furnishers are reporting on-time payments. Despite reporting Plaintiff as deceased, Equifax's policies and procedures allow for deceased credit files to be sold to furnishers for the purpose of obtaining new credit.  Moreover, Equifax's policies and procedures allow for the reporting of new accounts (trade lines) during the time that consumers (like Plaintiff) are being reported as deceased.  These policies decisions are made despite the fact that Equifax has repeatedly been sued for inaccurately reporting deceased consumers throughout the country.  Plaintiff is just one of many consumers who are currently or have in the past been misreported as deceased or with the wrong demographic information (such as date of birth).

## II.    FACTUAL BACKGROUND

Bank of America reported Plaintiff as deceased in June 2017.   Despite Equifax reporting Plaintiff as deceased, Equifax began reporting a new credit account for Plaintiff from Discover Bank in July 2020.   In or about September 2020, Plaintiff learned that Equifax was reporting an incorrect date of birth of **/**/1968.[1]   Plaintiff was born in xx/xx/1965.    Plaintiff called into Equifax on September 25, 2020 to dispute the inaccuracy. (Exhibit 3, EIS-JONES III 1).  Equifax was reporting Plaintiff with the wrong date of birth and also as deceased.   Plaintiff was asked to send proof of his date of birth, and he was informed the deceased would be corrected.



| 09/25/2020 | FE3 | cx ci for log in help in myequifax AND TO GET a copy of his credit report/ LACK of kba/ agent advised to send documents/ cx agred/ no other concern/ cx given DOb IS ▮▮▮/1965 and address is▮▮▮▮▮▮▮▮▮ dr 34653/ eoc |

After Plaintiff's phone dispute, Equifax failed to correct Plaintiff's credit file. On October 16, 2020, Plaintiff mailed a detailed dispute letter to Equifax, which Equifax had its vendor process. On October 26, 2020, Equifax processed the dispute letter.  Within the dispute, Plaintiff provided an image of a Florida Driver's license,[2] an Earning Statement from United Site of Florida, Inc. for the period beginning 10/2020 and ending 10/10/2020 (through ADP), a W2 Earning Summary for the year 2019, and a narrative including, "I assure you I am not deceased!" (See Exhibit 4, EIS -JONES 1-8). On October 28, 2020, Equifax responded to Plaintiff's dispute indicating

---

[1] Plaintiff's ex-wife has a **/**/1968 date of birth and it is unclear why Equifax was misreporting.
[2] Plaintiff FL DL was issued on 02/27/2019, during the time that Equifax was reporting Plaintiff as deceased.

that Plaintiff was "not reporting as deceased" and verifying the wrong date of birth of

"**/**/1968."  (See Exhibit 5, EIS-JONES -0020)

---

**The Results Of Our Reinvestigation**

>>> *We have reviewed your concerns and our conclusions are:*
YOUR SOCIAL SECURITY NUMBER IS CURRENTLY REPORTING CORRECTLY ON YOUR EQUIFAX CREDIT FILE. PLEASE BE ADVISED THAT YOU ARE CURRENTLY NOT REPORTING AS DECEASED ON THE EQUIFAX CREDIT FILE.

>>> *We have reviewed the current address. The results are:* THE CURRENT ADDRESS HAS BEEN ADDED/UPDATED PER THE INFORMATION YOU HAVE SUPPLIED. ▆▆▆▆▆ NEW PORT RICHEY FL 34653   Phone: ▆▆▆-8350 Residence Since: 10/2006

>>> *We have reviewed the identification information. The results are:* YOUR NAME HAS BEEN UPDATED. YOU MAY WISH TO PROVIDE YOUR CREDIT GRANTORS WITH THE UPDATE.   Name: *MARVIN JOSEPH JONES* SSN: XXX-XX-9484   Birthdate: ▆▆▆1968

---

Equifax erroneously informed Plaintiff he was not being reported as deceased,

when Equifax continued to report him as deceased.   Equifax was aware that Plaintiff

was alive and had received enough information to remove the deceased reporting.

> Q· ·And I understand the agent made a mistake. My question
> to you was regarding the dispute letter and the documents that were
> provided by plaintiff on October 26, 2020, Equifax should have
> deleted the deceased reporting with that Bank of America trade
> line, correct? · A· Yeah. Based upon the dispute letter that Equifax
> received from Mr. Jones which expressed a concern about the
> deceased information, Equifax policy is to have updated that file
> and removed any deceased information reporting on the file.
> (Exhibit 2, Munson Depo. 62:12-25)

Equifax also received sufficient evidence of Plaintiff's correct date of birth and

should have fixed Plaintiff's date of birth. (Exhibit 2 Munson Depo. 63:18-25; 64: 1-

22).

After the dispute, Equifax continued to report the Plaintiff as deceased and with

the incorrect date of birth.  Plaintiff mailed another detailed dispute letter to Equifax

which it processed on November 12, 2020. (Exhibit 7. EIS-JONES 24-40).  The letter

provided an image of Plaintiff's State of Florida Marriage Record, a copy of the

Equifax response from October 28, 2020, a Wisconsin birth certificate, Plaintiff's

Florida Driver's license, an Earning Statement from United Site of Florida, Inc. a W2

and earning summary for the year 2019 and a narrative highlighting the inaccuracies.

Equifax again failed to correct the date of birth or the deceased reporting.

> "Q: should that agent have removed the deceased reporting based
> on plaintiff's second written dispute received on November 12th, 2020?
> A·  ·Yes.·  The  agent  should  have  updated  the  file  to  remove  that
> information  based  upon  the  letter  that  we've  received  and  the
> correspondence  which  addresses  the  concern  about  the  deceased
> information." (See Exhibit 2, Munson Depo: 78:1-12)

On November 16, 2020, Equifax responded to Plaintiff's dispute indicating "The

Results are: We have updated Your date of Birth to **/**/1965." (See Exhibit 8, EIS 61).

That was not true.  Equifax continued to indicate that Plaintiff was deceased and

continued to indicate the incorrect date of birth for Plaintiff.



Plaintiff called into Equifax on November 19, 2020, and continued to dispute

the inaccurate reporting by Equifax.  Since Equifax continued to report inaccurately,

Plaintiff mailed another detailed dispute letter to Equifax on November 27, 2020.

Equifax received Plaintiff's dispute but throughout discovery, Plaintiff has not been

able to identify a response to this dispute.  Based on Equifax's records, sometime in

December 2020, Equifax stopped reporting Plaintiff as deceased. Equifax does not

know why it stopped reporting Plaintiff as deceased since Bank of America never

communicated further information about Plaintiff to Equifax after June 2017.  Equifax continued to report the wrong date of birth in December 2020 and January 2021.

Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB") on January 29, 2021, because of the inaccurate reporting.   On February 2, 2023, Equifax mailed Plaintiff a response demanding documents about his date of birth[3].   In February 2021, Equifax continued to report the wrong date of birth but inexplicably, it re-inserted the deceased reporting into Plaintiff's file. Plaintiff called into Equifax on February 3, 2021, to dispute the inaccurate reporting. (Exhibit 3, EIS_JONESIII- 001).  On February 7, 2021, Plaintiff filed another CFPB Complaint about Equifax's inaccurate reporting (Exhibit 14, EIS-JONESIII 22-26).  On March 2, 2022, Equifax provided Plaintiff with credit report #1561526625 with the wrong date of birth of **/**/1968. It also showed Plaintiff as "CONSUMER_DECEASED" (Exhibit 15, Equifax Report #1561526625)

Plaintiff was in the process of moving from Florida to Georgia and was attempting to purchase a home.  Plaintiff retained attorney Rebbecca Goodall to help him fix Equifax's inaccurate reporting.  On September 27, 2021, Equifax processed a dispute sent by Attorney Goodall on behalf of Plaintiff.  Plaintiff disputed the deceased reporting.  On September 29, 2021, Equifax sent a letter to Plaintiff

---

[3] Equifax acknowledged having received the Florida Driver's license and Birth Certificate in October 2020 (Exhibit 2, Munson Depo. 128:19-25; 129:1-8)

indicating "THE ACCOUNT/ITEM HAS BEEN UPDATED TO NO LONGER

REPORT AS DECEASED." (Exhibit 17, EIS Jones  99-102)



Despite the dispute results, and despite showing within the dispute results the

"Status Consumer is deceased", Equifax mis-informed Plaintiff and continued to report

Plaintiff as deceased.  On October 6, 2021, Plaintiff was denied a mortgage loan from

Geneva Financial because of Equifax deceased reporting.  Between August 27, 2021,

and November 3, 2021, Equifax provided Plaintiff's credit file with a "zero beacon"

to at least 5 potential creditors.[4]  Plaintiff was denied every loan.

## III.   LEGAL STANDARD

Under Fed. R. Civ. P. 56 (c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law." *Sampson v. Equifax Info.

Servs., LLC*, No. CV204-187, 2005 U.S. Dist. LEXIS 19240, at *3-4 (S.D. Ga. Aug.

29, 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A genuine

---

[4] Amongst the creditors were Fifth Third Bank, Wells Fargo Auto, Highlander Motor Sales and Geneva Financial.

factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oyv. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Sampson,* No. CV204-187, at *4) (citing *Anderson*, 477 U.S. at 248). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Maxi-Taxi of Fla., Inc. v. Lee County Port Auth.*, 301 Fed. Appx. 881, 885 (11th Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23).

## IV.  **ARGUMENT**

There are no disputed material facts concerning whether Plaintiff was or is deceased.  There are also no disputed material facts that Equifax reported Plaintiff's wrong date of birth. Therefore, resolution of these issues are questions of law and best suited for summary judgment. *Alabran v. Capital One Bank*, No. 3:04CV935, 2005 WL 3338663 (E.D. Va. Dec 8, 2005) (granting summary judgment on the issue of accuracy because there were no disputed facts whether Plaintiff was or was not obligated on the subject indebtedness)

After discovery, there are no genuine issues as to any material fact between the parties as it relates to liability under the FCRA. Equifax reported patent

inaccuracies on Plaintiff's credit report, failing to ensure "maximum possible accuracy" as required by § 1681e(b) of the FCRA. Equifax's policies and procedures are not sufficient to fulfill Equifax's duty under the FCRA, since Equifax knows that its current procedure results in the continued reporting of incorrect dates of birth as well as classifications of "deceased" despite receiving disputes and a multitude of evidence to the contrary.  Equifax acknowledged several errors through its attempts to correct Plaintiff's credit report.  Equifax knew Plaintiff was alive after September 2020 and continued reporting him as deceased until at least December 2021.  Equifax was also in possession of several documents from Plaintiff regarding his correct date of birth, yet it continued to report Plaintiff's wrong date of birth until at least March 2021.

## A. OVERVIEW OF THE FCRA AND EQUIFAX'S VIOLATIONS OF THE FCRA.

Accuracy is the core of the FCRA. Congress enacted the FCRA in 1970 as Title IV of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r ("CCPA"), its omnibus act regulating the consumer credit industry.  Sections 1681e(b) and 1681i are the two provisions within the FCRA that are applicable to the determination of Equifax's liability and most-often litigated in accuracy cases such as this one. The first of these sections, 1681e(b), provides:

(b) Accuracy of report

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

Accordingly, for each credit report Equifax prepared about the Plaintiff, it was required to use procedures that were reasonably likely to achieve the exceptionally high standard of "maximum possible accuracy." The objective of § 1681e(b) is to ensure "maximum possible accuracy." An assurance of maximum possible accuracy under §1681e(b) requires more "than merely allowing for the possibility of accuracy." *Smith v. E-BackgroundChecks.com, Inc.*, 81 F. Supp. 3d 1342, 1357 n.18 (N.D. Ga. 2014) (citing *Price v. Trans Union, LLC*, 839 F. Supp. 2d 785, 793 (E.D. Pa. 2012) (citations omitted). The statute accordingly imposes a high standard for consumer reporting agencies. *Andrews v. TRW, Inc.,* 225 F.3d 1063, 1068 (9th Cir. 2000) ("very high standard set by statute"), *rev'd on other grounds*, 534 U.S. 19 (2001).

### i.   **Equifax's Policies Were Unreasonable As a Matter of Law and Resulted in Negligent/Reckless Inaccurate Reporting.**

A consumer reporting agency violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy. *Pedro v. Equifax Info. Sols., LLC*, 868 F.3d 1275, 1281 (11th Cir. 2017); Equifax published Plaintiff's credit

reports with the inaccurate "consumer deceased" and the wrong date of birth.

Whether a CRA's implemented policies are sufficient under the FCRA (whether the policies are "reasonable") is generally a question for the jury; however, such a determination can be made on summary judgment where "the … unreasonableness of the procedures is beyond question." *McGhee v. Rent Recovery Sols., LLC*, No. 1:17-cv-72-CC-JKL, 2018 U.S. Dist. LEXIS 220732, at *34-35 (N.D. Ga. July 6, 2018) (quoting *Crabill,* 259 F.3d at 664) (internal quotation marks omitted). Equifax also does not have in place reasonable procedures to assure maximum possible accuracy.

a.  Equifax employs a "flag system" when it receives actual documentation that a consumer is deceased; however, there is no alert when a customer (furnisher) simply provides information that a consumer is deceased. (Exhibit 2, Munson Depo. 91:24-25; 92:1-25).

b.  Equifax did not require any documentation from Bank of America to begin reporting plaintiff as deceased nor did Equifax do any independent investigation prior to beginning to report the deceased tradeline. (Exhibit 2, Munson Depo. 22:4-10).

c.  Equifax's policies did not trigger an investigation when furnishers purchased Plaintiff's credit file for new credit accounts while Equifax was reporting Plaintiff as deceased. (Exhibit 2, Munson Depo. 164:16-

14

20).

d.   Equifax's policies do not trigger an investigation when a new credit account is opened while Equifax has a deceased status report. (Exhibit 2, Munson Depo. 25:13-17).

e.   Equifax communicated with Plaintiff over the phone on September 25, 2020, November 19, 2020, and February 3, 2021, all while continuing to report Plaintiff as deceased, yet such verbal communications do not trigger a removal of the deceased reporting.  (Exhibit 3, EIS-JONESIII-001).

f.   Equifax received and processed dispute letters from Plaintiff on October 26, 2020, November 12, 2020, December 2, 2020, and in September 2021, all while being reported as deceased, yet receiving the letters did not trigger the removal of the deceased reporting.

g.   Equifax received complaints by Plaintiff through the CFPB on January 29, 2021, and February 7, 2021, all while being reported as deceased, yet such event does not trigger a removal of the deceased reporting.

h.   Equifax employs a foreign vendor when conducting dispute investigations like Plaintiff.  Despite acknowledging several mistakes by different dispute investigators, Equifax is unaware if anyone has disciplined or corrected the agents that made the mistakes in Plaintiff's

15

case. (See Exhibit 2, Munson Depo 67:19-24)

i.    Equifax never communicated with Bank of America about Plaintiff's disputes about the deceased reporting throughout the relevant time. (Exhibit 2, Munson Depo 78:20-23; 80:20-15; 81:1-23)

Here, there is no question that Equifax's "policies" were unreasonable in light of its affirmative duty to ensure the "maximum possible accuracy" of Plaintiff's credit report. Equifax had actual knowledge that Plaintiff was alive and the effect of a deceased reporting; namely, that Plaintiff would not have access to credit.

## ii.    Equifax failed to conduct a reasonable investigation and to delete/correct the inaccurate information.

Section 1681(i) sets forth the responsibilities of credit reporting agencies when a consumer disputes the completeness or accuracy of any item of information contained in the consumer's file with the consumer reporting agency. Subsection (a) states, in relevant part:

(a)    Reinvestigations of disputed information.

(1)    Reinvestigation required.

In general. Subject to subsection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, *conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information*,

or delete the item from the file in accordance with paragraph (5), before
the end of the 30-day period beginning on the date on which the agency
receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681(a)(1)(A) (Emphasis added). The legislative history of § 1681i

characterizes the dispute and correction process as "the heart of… efforts to ensure

the ultimate accuracy of consumers report." See Committee Report, S. Rep. No. 185,

104th Cong. 1st Sess., at 43 (Dec. 14 1995).

Plaintiff is confident Equifax violated this section. Equifax will not be able to

defend that _on several occasions_ its investigation revealed Plaintiff was indeed alive,

that it notified Plaintiff he was no longer being reported as deceased, yet it continued

to report him as deceased.  Equifax violated 1681i(a)(5) for its failure to update or

delete any information that was the subject of Plaintiff's dispute as inaccurate or that

could not be verified.  Equifax was able to determine on several occasions that it was

reporting the wrong date of birth for plaintiff, it informed Plaintiff it had corrected the

date of birth, yet continued to report the wrong date of birth.

Equifax has acknowledged that throughout the disputes Plaintiff provided

sufficient evidence to correct the date of birth and to remove the deceased reporting,

yet it continued to report Plaintiff's inaccurate information.

### iii.    Equifax inaccurate reporting was harmful to Plaintiff.

In addition to the direct harm to Plaintiff's reputation, and the reduced

access to credit, both of which constitute harm under the FCRA, Plaintiff suffered

actual damages in the form of emotional distress and mental pain (including sleepless nights) and anguish, including but not limited to embarrassment, emotional and mental pain, stress, frustration, and anxiety.  Plaintiff was also denied several loans based solely on Equifax's inaccurate reporting.

### iv.    Equifax Violations of The FCRA were Willful and Reckless

Equifax's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Under 15 U.S.C. §1681n(a), any person [credit bureau] who willfully fails to comply with any requirement imposed under this subchapter is liable to the affected consumer for actual, statutory, or punitive damages. *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, at 1302 (11th Cir. 2019) (citing *Collins v. Experian Info. Sols., Inc.,* 775 F.3d 1330, 1336 (11th Cir. 2015).  The Supreme Court has held that "**reckless disregard of a requirement of FCRA would qualify as a willful violation** within the meaning of § 1681n(a)." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).  Recklessness means "conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (citing *Safeco*, 551 U.S. at 68 (quotations omitted)). In *Marchisio*, the egregious facts surrounding the defendant's failure to conduct a reasonable investigation supported the court's conclusion that defendant's conduct was willful. *Id.*, at 1302. ***The defendant's reporting***

***"entailed 'an unjustifiably high risk of harm that [was] either known or so obvious that it should [have been] known.'"*** *Id.* (**emphasis added**) Accordingly, defendant was found to have acted willfully. *Id.*

Plaintiff suffered economic loss (as to the postage paid and time wasted) plus mental anguish and physical consequences based on Equifax's inaccurate reporting based on Plaintiff's wrong date of birth. Moreover, Plaintiff suffered economic, mental anguish and physical conditions based on Equifax reporting him as deceased. (See Exhibit 19, Plaintiff's Affidavit).

## V.     <u>CONCLUSION</u>

For the above reason, the Court should grant Plaintiff's motion for Summary Judgment.

WHEREFORE, Plaintiff prays that Summary Judgment be granted in his favor and against Equifax for Equifax's willful and reckless violations of 15 U.S.C. 1681e(b) and 15 U.S.C. 1681i, or in the alternative Equifax's negligent actions which violated 15 U.S.C. 1681e(b) and 15 U.S.C. 1681i, and that Equifax be assessed with all costs of this action and that Plaintiff have such other further relief as this court seems proper.

Dated this 12th day of May, 2023.

> **/s/Octavio Gomez**
> Octavio "Tav" Gomez
> Florida Bar #:0338620
> Georgia Bar #: 617963
> Pennsylvania #: 325066
> The Consumer Lawyers PLLC
> 412 E. Madison St, Ste 916
> Tampa, FL 33602
> Cell: (813)299-8537
> Facsimile: (844)951-3933
> Tav@theconsumerlawyers.com
> Lisa@theconsumerlawyers.com
> *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed on this 12th day of May 2023, via the Court's CM/ECF system which sent electronic notice of such to all parties of record.

> **/s/Octavio Gomez**
> Octavio "Tav" Gomez
> Georgia Bar #: 617963
> The Consumer Lawyers PLLC
> *Attorney for Plaintiff*